Migdalia **GONZALEZ DE BLASINI, Plaintiff,**

v.

**FAMILY DEPARTMENT, as an Agency of the Commonwealth of Puerto Rico, Defendant.**

Civil No. 02–1364(JAG).

United States District Court, D. Puerto Rico.

Aug. 12, 2003.

Godwin Aldarondo–Girald, San Juan, PR, for plaintiff.

Mariana Negron–Vargas, Commonwealth Department of Justice, Federal Litigation Division, Felix M. Roman–Carras-

quillo, Elfrick Mendez–Morales, San Juan, PR, for defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

On June 14, 2002, defendant Department of the Family ("the Department") moved to dismiss plaintiff Migdalia Gonzalez de Blasini's ("Gonzalez de Blasini") complaint, based on the Eleventh Amendment. (Docket No. 2.) On July 12, 2002, Gonzalez de Blasini filed an opposition (Docket No. 7) and an amended complaint. (Docket No. 8.) On July 19, 2002, the Department moved to dismiss the amended complaint. (Docket No. 9.) On September 4, 2002, the Department filed a reply to Gonzalez de Blasini's opposition. (Docket No. 18.) For the reasons discussed below, the Court **GRANTS** the Department's motion to dismiss (Docket No. 7), **GRANTS** the request to file the amended complaint (Docket No. 8), and **PARTIALLY DENIES** the motion to dismiss the amended complaint. (Docket No. 9.) The case will continue against defendants Zayas and Maldonado solely in their personal capacity.

## FACTUAL BACKGROUND[2]

Gonzalez de Blasini worked at the Department for twenty-seven years. Under the administration of former Governor Pedro Rossello, she held several trust positions from 1993 to 2000. On November 2000, a new administration was voted into power. By December 2000, the Department had reassigned Gonzalez de Blasini to a career position.

On January 2, 2001, Governor Sila Calderon took office. By mid-January, Governor Calderon appointed Yolanda Zayas as Secretary of the Department. Soon thereafter, Gonzalez de Blasini began to experience political discrimination. She decided to take a two-week vacation leave. Someone in the Department, however, requested that she vacate her office before leaving on vacation. She disregarded the request. While still on vacation, she applied for early retirement. Instead of granting her request, the Department reclassified her position from Executive Director IV to Executive Director I. The latter position entailed fewer responsibilities and a lower salary. The Department reclassified her retroactively to September 1, 2000. As a result, the Department concluded that it had paid Gonzalez de Blasini an excess salary of $2,502.00 per month for six months. Therefore, the Department retained her monthly paychecks until it recovered the amount allegedly due to it: $15,012. On April 1, 2001, Gonzalez de Blasini realized that the Department had also taken her Life Insurance Policy away, and she allegedly was forced to resign her post.

Due to a pattern of political discrimination and harassment, Gonzalez de Blasini claims that she suffered insomnia, anxiety, depression, and high blood pressure.

## DISCUSSION

A. *Motion to dismiss standard*

Pursuant Fed.R.Civ.P. 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court

---

1. Yamil Jaskille, a second year student at the University of Puerto Rico School of Law, assisted in the research and preparation of this opinion.

2. The facts are taken from the Complaint and Amended Complaint

accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiff is responsible for putting his best foot forward in an effort to present a legal theory that will support his claim. *Id.* at 23 (*citing Correa–Martinez*, 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

**B.** *Eleventh Amendment Sovereign Immunity*

In her original complaint, Gonzalez de Blasini only sued the Department. The Department then moved to dismiss, arguing that the Eleventh Amendment barred her claim. Gonzalez de Blasini opposed, claiming that Eleventh Amendment immunity did not apply to the Department. She argued that the Department is not an arm or "alter ego" of the State. In the alternative, she argued that the Department had waived its immunity, since most of its budget comes from federal funds. Gonzalez de Blasini's argument lacks merit.

It is well settled that sovereign immunity under the Eleventh Amendment extends beyond the core of the state government to "arms of the state." *See Metcalf & Eddy, Inc. v. P.R. Aqueduct and Sewer Auth.*, 991 F.2d 935, 939 (1st Cir. 1993). The Eleventh Amendment's primary concern is to minimize the federal courts' involvement in the disbursal of the state funds. *Id.* Therefore, when the primary action of the complaint is to recover money from the state, "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit...." *Ford Motor Co. v. Dep't of Treasury of State of Ind.*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Accordingly, the courts have held that whether an entity is considered an "arm of the state" primarily depends on whether an adverse judgment would have to be satisfied by the State treasury. *See Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1203 (1st Cir.1993); *Melendez v. Commonwealth of P.R.*, 845 F.Supp. 45, 48 (D.P.R. 1994).

The First Circuit has developed a multi-factor analysis to be performed when determining whether an entity is an "arm of the state." These elements are: whether the entity (1) performs an "essential" or "traditional" governmental function as opposed to nonessential or merely proprietary one; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) possesses the status of a separate public corporation; (5) may sue and be sued on its own name; (6) can enter into contracts in its own name; (7) has been granted a state tax exemption on its property and (8) has been expressly debarred from incurring debts in the State's name or behalf. *See Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir.2002); *Great River Inds., Inc. v. Public Service Comm'n of P.R.*, 131 F.Supp.2d 265, 270 (D.P.R.2001.)

Under Puerto Rico law, the Department "shall be the agency responsible for carrying out the programs of the Common-

wealth directed toward the solution or mitigation of the social problems of Puerto Rico." 3 P.R. Laws Ann. § 211b (2002). The Governor appoints the Secretary and empowers him/her to enter in agreements with other governmental instrumentalities, or medical professionals, who will assist the Department achieve its objectives and purposes. *See id.* § 211i. The Department may suggest public policy, but the Governor and Legislature must approve the legislation prior to implementation. *See id.* § 211b. The Department can also "initiate the corresponding legal proceedings to exact the obligation or payment of the contributions determined from the person or persons legally obligated to provide support." *See id.* § 211l–10.

Immunity may be warranted if, among other things, the activity can be categorized as one usually performed by the government, rather than one performed by a private company. *Royal Caribbean Corp. v. Puerto Rico Ports Authority,* 973 F.2d 8, 10 (1st Cir.1992). The Department performs an eminently governmental function, for it must manage and mitigate the social problems that impact families in Puerto Rico. The Department makes sure the public has the appropriate means to promote family interaction and integration. Its role is not that of selling service, but that of providing assistance, support and relief to the Puerto Rican families. In this sense, the Department's main mission is to watch out for the public interest. Although the Department may administer its own budget and enter into agreements with other governmental agencies or medical professionals, its structure reflects the significant degree of control the State retains over its operations. Nothing in the Department's enabling law evidences the State's intention to immunize itself from responsibility for the Department acts or omissions. Thus,

the relevant factors lead the Court to conclude that the Department is an arm or "alter ego" of the State, and is entitled to immunity under the Eleventh Amendment.

Gonzalez de Blasini next argues that the Department is precluded from asserting Eleventh Amendment immunity because the Commonwealth receives federal funds. She effectively contends that the Department has waived its sovereign immunity. She is mistaken.

A state may waive its Eleventh Amendment immunity in one of two ways. It may voluntarily invoke the jurisdiction of a federal court or make a "clear declaration that it intends to submit itself to [a federal court's] jurisdiction." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). A waiver of immunity must be unequivocally expressed. *Id.* at 682, 119 S.Ct. 2219. Yet, "Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that acceptance of the funds entails an agreement to the actions". *Id.* at 686, 119 S.Ct. 2219 (*citing South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987.)) "If Congress is not unmistakably clear and unequivocal in its intent to condition a gift or gratuity on a State's waiver of its sovereign immunity, we cannot presume that a State, by accepting Congress' proffer, knowingly and voluntarily assented to such a condition." *Coll. Sav. Bank,* 527 U.S. at 681, 119 S.Ct. 2219.

Gonzalez de Blasini fails to direct the Court to any case where Congress gave an unequivocal indication that the Department, by accepting federal funding, did so on the condition and knowing that it waived its Eleventh Amendment immunity. There is simply no support for Gonzalez de

Blasini's argument that the Department has waived its Eleventh Amendment immunity. Accordingly, the Court grants the Department's motion to dismiss.

### C. *Amended Complaint*

Gonzalez de Blasini amended her complaint pursuant to Fed.R.Civ.P. 15 to add Yolanda Zayas and Victor Maldonado as defendants. The Department moved to dismiss the amended complaint based on Eleventh Amendment sovereign immunity. The Eleventh Amendment bars suits against the Commonwealth of Puerto Rico and against a state officials acting in an official capacity. State officials can be sued in their personal capacity, however. *See Bernier–Aponte v. Izquierdo–Encarnacion,* 196 F.Supp.2d 93, 101 (D.P.R. 2002); *Vega Castro v. Puerto Rico,* 43 F.Supp.2d 186, 189 (D.P.R.1999). Accordingly, the Court will dismiss the claims against Zayas and Maldonado in their official capacity and will allow the case to proceed against them in their personal capacity.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Department's motion to dismiss, and **GRANTS** Gonzalez de Blasini's request to file the amended complaint to include Zayas and Maldonado. The Department's motion to dismiss the amended complaint is **GRANTED in part and DENIED in part.** The court **DISMISSES** the case against Zayas and Maldonado in their official capacity. The case shall continue against them in their personal capacity.

IT IS SO ORDERED.